## PARTRIDGE vs. C. & A. HAVENS.

Where the defendant in a judgment, who was imprisoned upon a capias ad satisfaciendum, subsequently obtained his discharge under the act to abolish imprisonment for debt, and made an assignment of his property; and the assignees afterwards conveyed all his interest in his real estate, to the plaintiff in the judgment, without any consideration whatever; *Held*, that such conveyance was invalid, and transferred *no right to the equitable interest of the judgment debtor in the land to the grantee in such coveyance*.

*Held also*, that by the arrest of the judgment debtor upon the ca. sa., and by his subsequent discharge under the insolvent act, his equitable interest in his real estate passed to his assignees discharged of any equitable lien thereon by virtue of the judgment.

Where the wife *is* entitled to an equitable provision for the support of herself and her children out of a legacy given to her by a deceased relative, which legacy the husband has not reduced to possession, that equity is a sufficient consideration for a post-nuptial agreement, of the husband, that a part of the legacy shall be secured for the use and support of the wife and her children.

If a father pays the consideration money, upon the purchase of real estate, and takes a conveyance of the estate in the name of his child, the legal presumption is that it was intended as a gift, or advancement for the child, and not as a trust for the benefit of the father.

Where the wife holds the proceeds of a legacy as her separate estate, under an agreement with her husband which is valid, and she afterwards invests it in the purchase of real estate, in the names and for the benefit of her children, the creditors of the husband are not entitled to an interest in the land by virtue of any resulting trust in their favor.

April 2.

THIS was an appeal from a decree of the late assistant vice chancellor of the first circuit. The bill was filed againt the defendants, who were the infant children of Nathaniel Havens and Abigail his wife, to obtain a conveyance of the legal title to about twenty acres of land in the town of Riverhead. The grounds of the claim, as alleged in the bill, were that the premises in equity belonged to N. Havens the father, by virtue of a resulting trust; and that he had procured the legal title to be conveyed to the defendants for the purpose of defrauding the complainant in the collection of a judgment against N. Havens. The infants put in a general answer by their guardian ad litem, and the cause was heard upon pleadings and proofs. The facts, as es-

tablished by the proofs, were substantially as follows:
The brother of Abigail Havens, the mother of the defen-
dants, died about the year 1817, and by his will gave to her
a legacy of $500. By her consent, about $200 of the legacy
was paid, by the administrator of the brother, in discharge
of debts due by her husband previous to such brother's death.
The residue of the legacy was suffered to remain for some
time, in the hands of the administrator, for the purpose of
being appropriated exclusively for the benefit of Mrs.
Havens the legatee. But she, afterwards, apprehending
that the money was unsafe in his hands, consented that the
money should be collected by her husband, under an ex-
press agreement with the husband that the money, if collect-
ed, should be appropriated solely to the benefit of herself and
her children. Under that agreement the husband received
$150, towards the legacy, about the last of August, 1819,
which sum was loaned immediately thereafter to Thomas
Youngs, for the benefit of Mrs. Havens and her children;
but the note therefor was taken in the name of the hus-
band. In September, 1821, the husband collected the res-
idue of the legacy, $200, and delivered the same to his
wife. She loaned it to John Downs, upon an understand-
ing that it was loaned for the benefit of herself and her chil-
dren. Downs delivered her a memorandum of the amount
lent; but as he died shortly after, and as the debt was sub-
sequently settled by his executors, the memorandum was
not produced; nor did it appear whether it was a note, or
in whose name it was taken. An arrangement was after-
wards made by N. Havens and wife, through the interven-
tion of Joshua Downs, by which $136 of the money loan-
ed to Youngs, and the $200 loaned to John Downs, were to
be invested in the purchase of the premises in question, from
the executors of the latter, and which premises were to be
conveyed to the children. This arrangement for the purchase
of the premises to be conveyed to the defendants, and to be
paid for with the proceeds of this part of the legacy, was
made at the particular request of Mrs. Havens, their mother,
and with the approbation of her husband. In pursuance of

the arrangement, the executors conveyed the premises to Joshua Downs, on the 19th of April, 1822; who gave to them his own note for the residue of the purchase money beyond the $200 due from their testator. The next day Joshua Downs conveyed the premises to the defendants, according to the agreement which had previously been made. And Youngs gave his note directly to Joshua Downs, for the $136 for which the latter had given his note to the executors; and the original note given for the money loaned, and on which that amount was then due, was given up and cancelled.

In January, 1822, the complainant recovered a judgment against N. Havens, in the Suffolk court of common pleas, for $239,87, upon two sealed notes given in 1807 and 1808. On that judgment a fi. fa. was afterwards issued, upon which the sheriff returned that the defendant therein had no goods or chattels in his bailiwick. A ca. sa. was afterwards issued, upon which the defendant was arrested and imprisoned. He subsequently applied for a discharge under the act to abolish imprisonment for debt in certain cases; and in November, 1822, under an order of the judge, he made an assignment of all his property to J. Downs and W. Griffing, as directed by the statute. On the 27th of January, 1824, the assignees, for the nominal consideration of one dollar as stated in their deed, but without any consideration whatever as they both testified, conveyed all their right and interest in the premises in question to Asa Partridge, the complainant in this suit.

The assistant vice chancellor decided that the purchase money of the premises belonged to N. Havens, the husband of the legatee, and that the transaction created a resulting trust in his favor, so that he might have compelled a conveyance of the premises to himself; but that the assignment executed by him, under the insolvent act, transferred all his interest in the premises to his assignees, for the benefit of his creditors generally, and that the convey-

ance from the assignees to the complainant was therefore invalid.  And he dismissed the bill, with costs.

*T. Fessenden,* for the appellant.  Upon the conveyance of the premises in question to Downs, the consideration therefor having been paid with the money and notes of N. Havens, a trust in the premises resulted to Havens. Such trust can be proved by parol.  Upon the conveyance to Downs, the judgment of the complainant became a lien on the premises ; and such premises might have been sold under the judgment.  (1 *John. Ch. Rep.* 583.  3 *John. Rep.* 216.  1 *John. Cas.* 153.  1 *John. Ch. Rep.* 45, *note.*  11 *John. Rep.* 91.  1 *John. Ch.* 405, 437.  2 *Story's Eq.* 443, § 1201)  The conveyance by Downs to the defendants was voluntary and without consideration, and void as to the creditors of their father.  (3 *John. Ch. Rep.* 492. 4 *Id.* 450.  2 *Story's Eq.* 440, § 1197.)  The legacy having come to the hands of ₒHavens, his wife ceased to have any right to control or direct it.  (3 *Bac. Abr. p.* 289, *tit. Baron and Feme, C.* 3.  *Idem,* 290, *D.*)  The discharge of N. Havens under the act to abolish imprisonment for debt, placed the complainant in the same situation he would have been in, if he had never issued a ca. sa. against Havens.  The right and interest of Havens in the premises passed to his assignees, subject to the complainant's lien. Such lien continued in equity, if it did not at law. The conveyance from the assignees to the complainant passed to the latter the equitable title.  The debt of Havens to the complainant was a sufficient consideration to support the conveyance.  The complainant having the equitable title, is entitled to a conveyance from the defendants, who stand in the place of Downs the original trustee.

*E. H. Ely,* for the respondents.  The proper persons are not parties to the bill.  The assignees of Havens and Downs should have been made parties, (*Edw. on Parties,* 162, 163 ;) and the bill should have been filed by the

1844.

Partridge
v.
Havens.

complainant on behalf of himself and all other creditors of N. Havens. The purchase of the complainant from the assignees of Havens was in violation of the act against champerty and maintenance. (1 *R. L. of* 1813, *p.* 173. 1 *John. Rep.* 345. 5 *Id.* 489. 7 *Id.* 251. 8 *Id.* 479.) And the assignees had no right to give such a conveyance to the complainant without consideration. The premises in question were not conveyed by Havens to his assignees, nor were they intended to be ; and if they were, the deed to the complainant was in fraud of the other creditors of Havens. But if the deed to the complainant is valid, his remedy is at law in an action of ejectment ; and chancery will not aid him. (6 *John. Ch. Rep.* 222.) If the judgment of the complainant was a lien on the premises, such lien was discharged when Havens was arrested on the ca. sa. When Havens was imprisoned on the ca. sa., the debt of the complainant was, at the common law, discharged. (1 *Cowen*, 56.) The act under which Havens was discharged, kept it alive only in reference to the future acquisitions of Havens. It was extinguished as to the property which Havens had at the time of his assignment. Havens, by appropriating the legacy of his wife to the purchase of real estate for the use of herself and children, only did what a court of equity would have compelled him to do. (1 *John. Ch. Rep.* 153. 2 *Id.* 537. 3 *Id.* 129. 5 *Id.* 461. 6 *Id.* 225, 25, 178. 1 *Atk.* 190. 2 *Id.* 518. 2 *Ves.* 190. 9 *Id.* 369. 10 *Id.* 139, 145.)

THE CHANCELLOR. If the complainant had filed his bill as a judgment creditor of N. Havens, for the purpose of reaching an interest in this property which still belonged to his debtor, or to reach it upon the ground that it had been conveyed to the children in fraud of the complainant's rights as a creditor, the objection made in behalf of these infant defendants that the judgment debtor should have been made a party, would have been well taken. And as infants cannot be prejudiced by the neglect of their guardian ad litem to make such an objection in the answer,

the objection may be raised by their counsel at the hearing. But if N. Havens ever had any interest in the premises, as a resulting trust, or otherwise, the assistant vice chancellor is clearly right in supposing that such interest passed to the assignees by virtue of the assignment of November, 1822. And if their subsequent conveyance to the complainant was valid, he and the infant defendants were alone interested in the property, after that conveyance; and no other persons were necessary or proper parties to the bill in this cause at the time of filing it in May, 1824.

But the assistant vice chancellor was clearly right in supposing that the complainant acquired no title to the premises, either legal or equitable, under the conveyance from the assignees. I have not been able to find any evidence whatever from which I can presume that the conveyance was intended to be made in payment or satisfaction of the complainant's judgment, or of any part thereof. That judgment was for several hundred dollars; and yet the nominal consideration inserted in the conveyance from the assignees is but one dollar. Even that nominal sum was not paid; for the assignees were examined as witnesses, and both testified that they received no consideration whatever for the conveyance. And no agreement appears to have been made between the parties to that conveyance that even the one dollar mentioned therein should, in any event, be applied upon the judgment. Nor does the complainant allege in his bill that there was an agreement to receive that conveyance in payment, or in part payment, of his judgment against N. Havens. On the contrary, he expressly avers and charges, that with the exception of a very small sum collected by the sheriff upon the execution, the whole amount of the judgment, with the interest thereon, is still due to him. Even if there were no other creditors in this case who were entitled to share in the proceeds of the assigned property, the assignor would be entitled to have whatever his interest therein was worth applied upon the judgment; so that his future earnings might not be liable for the whole amount of the debt.

The effect of the arrest of the defendant in the judgment, upon the ca. sa., and of his subsequent assignment and discharge under the act to abolish imprisonment for debt in certain cases, (*Laws of* 1819, *p.* 117, § 6,) was to vest all the property and effects of the defendant who was thus arrested and in execution in his assignees, discharged of any legal or equitable lien which the plaintiff in the judgment might have had therein before such defendant was arrested on the ca. sa. ; but to leave the judgment in full force and effect as against any property which N. Havens might acquire subsequent to the assignment. If the equitable title to the premises in question, therefore, was in the judgment debtor at the time of the assignment, by the operation of a resulting trust or otherwise, the complainant can claim no interest in the property, by virtue of the right which he originally had to an equitable lien, under the provisions of the fourth section of the act concerning uses. (1 *R. L. of* 1813, *p.* 74.) For by changing the judgment debtor in execution, he lost his lien, if it previously existed ; and he can now only claim an interest in the premises through the assignees. And this voluntary conveyance from the assignees, without consideration and in violation of the trust upon which the interest, if any, of the judgment debtor in the premises had been assigned to them, furnishes no sufficient foundation for an application to the equitable powers of this court for relief. The bill, therefore, was properly dismissed upon that ground alone.

Again ; I think, upon the facts of this case, that the assistant vice chancellor was wrong in supposing that there was even a resulting trust, as to the premises in question, in favor of N. Havens. The wife had an equitable right to a support for herself and her infant children, out of the moneys given to her by the will of her brother ; which equity the court would have protected and enforced at any time before the legacy was reduced to possession by her husband. That equity was a sufficient consideration for the agreement between her and her husband, that the balance of the legacy still due from the administrator should, if collected by the husband, be ap-

propriated for the benefit of herself and her children solely. For if the husband had not consented to that arrangement, she might have applied to this court to protect her equity in the fund. And a post-nuptial contract between husband and wife, founded upon a sufficient consideration, by which property is set apart for her separate use, although void at law, will be sustained in equity. (*Garlick* v. *Strong*, 3 *Paige*, 440.) That such an agreement was made in this case, previous to the receipt of the two sums of money, due upon the legacy, which subsequently formed the sole consideration for the conveyance of the premises in question to Joshua Downs, and through him to these defendants, there can be very little room for doubt. The complainant has examined Mr. and Mrs. Havens as witnesses in this cause, and they both testify positively to such an agreement. And that the husband intended to carry this agreement into effect in good faith, after the receipt of the money, is evident from the fact that it was loaned upon the same understanding; although the parties do not appear to have been sufficiently acquainted with the law to take proper securities for the loans, in the name of a trustee, for the wife and children. This court converts the husband into a trustee for the wife in many cases, where it is necessary to protect her equitable rights. And I am inclined to think that if the husband had taken these funds, which he had agreed should be held for the sole use of the wife and children, and had invested them in the purchase of this lot, and had taken the conveyance therefor in his own name, without her consent, it would have been the duty of the court to have declared a resulting trust in favor of his wife and children, in these premises, in consequence of this misapplication of the fund. If so, the conveyance to Joshua Downs would have raised a resulting trust in the premises in this case, not in favor of the husband, but a resulting trust for the separate use of the wife and children.

Both conveyances in this case, however, were but different parts of the same transaction, and were intended to carry into effect the agreement by which the wife consented that

her interest in the fund should be conveyed directly to the children ; instead of having it secured for her separate use and the use of the children, according to the original agreement with the husband. The effect of the conveyances, therefore, is the same as if the conveyance by the executors of John Downs had been made directly to the defendants, under this new agreement, without the intervention of Joshua Downs. Looking upon the transaction in that light, there cannot be a pretence of a resulting trust in behalf of N. Havens. But if the money which formed the consideration of the conveyance had belonged absolutely to him, in his own right, such an investment might have been a fraud upon his creditors, so as to raise a resulting trust in their favor, if necessary, to enable them to reach the fund in the hands of these defendants.

The general rule, previous to the revised statutes, undoubtedly was, that if a man purchased real estate and paid for it with his own funds, and took a conveyance therefor in the name of a third person, there was a resulting trust in his favor ; unless the person in whose name the conveyance was made could introduce some evidence to rebut the legal presumption of such a trust. But no such presumption arose where a parent advanced the purchase money, or consideration, and took a conveyance in the name of his child. For in such a case the law presumed the conveyance was intended as a gift or advancement to the child. (*Lew. Law of Trusts*, 169. 3 *Sug. Law of Vend.* 10*th Lond. ed.* 262.) Here the children were wholly unprovided for. And the testimony, instead of rebutting the presumption that the intention of the parents was to vest a beneficial interest in the premises in the children, shows that such was evidently their intention.

The decree appealed from must therefore be affirmed, with costs.