STRONG *vs.* SKINNER and others.

It is not necessary that the legal estate should be vested in trustees, to enable a *feme covert* to dispose of her separate estate, in equity. A mere agreement entered into, before marriage with her husband, that she shall have the power to dispose of her real and personal estate, during coverture, will enable her to do so.

Although such an agreement becomes extinguished, at law, by the subsequent marriage, yet equity supports it, and will compel the husband to perform it.

Where, by an ante-nuptial agreement between husband and wife, the husband agrees that the wife's separate property shall not in any manner, be affected by the marriage, and that she shall have the same right of disposing of her separate property, and of purchasing other property without his assent, that she would have had, if she had continued sole and unmarried, she is after her marriage, absolutely a *feme sole* in respect to her separate property, and retains all the power over it, which she could have exercised as a feme sole, if her marriage had not taken place.

She therefore has the right, not only of selling her separate property, but, with the proceeds thereof, of purchasing other property, even from her husband, and to hold the substituted property as her separate estate, free from the control, or debts, of her husband.

And she has a perfect right and full authority to purchase, with her separate estate, either mortgages or judgments against her husband, and to hold such securities as a part of her separate estate; and to enforce the collection thereof by a sale of the mortgaged premises, or of the lands subject to the lien of the judgments. And at the sale she has the right to purchase, in her own name, the real estate of her husband, and to hold the land so purchased, as a part of her separate estate.

Equity will sustain such purchase, and will protect the real estate purchased, from both her husband and his creditors.

An assignment of property of the assignor in trust for the benefit of creditors, which contains a provision authorizing the assignee, in his discretion, to change the order of the preferences given therein to the preferred creditors, is fraudulent and void on its face.

Such an assignment is also fraudulent and void on its face, if it makes provision for only a part of the creditors of the assignor, and, without making any provision for the rest of his creditors, directs the assignee to re-assign to the assignor the surplus, if any remains, after satisfying the debts provided for in the assignment.

The fact that several of the debts preferred in an assignment in trust for the benefit of creditors, have been previously secured, by either judgment or mortgage, does not affect the validity of the assignment; and the provision in the assignment, for their payment, will not render such assignment fraudulent and void.

IN EQUITY.    This was a creditor's bill founded on a judg-
ment recovered against the defendant Reuben Skinner on the
5th of September, 1843, and on an execution issued on the
same, returned unsatisfied.    The bill was filed on the 10th of
October, 1845.    Dan Pond was made a defendant, on the
ground of having, on the 15th of May, 1841, accepted an as-
signment from R. Skinner of all his personal property, in trust
for certain of the creditors of Skinner.    The bill alleged, that
R. Skinner owed debts other than those provided for in the as-
signment.    The assignment authorized the assignee, in his
discretion, to change the order of preferences given therein ;
and directed the assignee, in case any surplus remained after
satisfying the debts provided for in the assignment, to re-assign
the same to the assignor.    The bill also alleged, that several
of the debts preferred in the assignment, had been previously
amply secured, by either judgments or mortgages.    The bill
also alleged that the assignment was fraudulent and void, and
was executed with intent to defraud creditors, &c.    The bill
alleged that Dan Pond, on the 1st of January, 1841, gave a
mortgage to the defendant, R. Skinner, for $4300, payable in
nine equal annual payments, on premises of sufficient value to
secure the payment of the same ; and that said sum remained
unpaid ; and if the mortgage had been cancelled it was can-
celled without consideration, and the cancellation was fraudu-
lent, &c.    The bill also alleged that on the 15th of September,
1841, the defendant, R. Skinner, confessed a judgment to Dan
Pond for $6547, which became a lien on real estate of R. Skin-
ner, of sufficient value to secure the payment of the same ;
that such judgment was confessed as a security and an in-
demnity to Pond, for liabilities assumed by him for R. Skinner,
&c.    The bill also alleged that such judgment had been as-
signed by Pond to the defendant Nancy Skinner, the wife of
R. Skinner ; that she had not assumed or paid any of the lia-
bilities of Pond for R. Skinner, for which such judgment had
been given ; and that Nancy Skinner had caused an execution
to be issued on such judgment, and the real estate of R. Skin-
ner to be advertised for sale.    The bill also alleged that on the

Strong *v.* Skinner.

3d of August, 1840, the defendants, Reuben Skinner and Nancy Skinner, then Nancy Parker, in contemplation of their marriage with each other, entered into an ante-nuptial agreement without the intervention of trustees, by which the separate property of Nancy Skinner was attempted to be invested for her sole and separate use and benefit after her intermarriage with R. Skinner ; and that after the making of such ante-nuptial agreement, and before the intermarriage of R. Skinner and Nancy Parker, the former sold to the latter a large amount of personal property at the price of $4558,60. And the bill alleged that no part of such personal property was present at the sale, and no note or security was given for such property, and no change of possession accompanied the sale, and that the consideration remained unpaid ; that at or about the time of the sale of such personal property, R. Skinner leased to Nancy Parker his cotton factory, and other real estate, for several years, for the annual rent of $250, and that since the giving of such lease she had received the rents and proceeds of said premises. The bill also alleged that the rent was an inadequate price for the use of said premises, and had not been paid ; and that the defendants R. Skinner and Nancy Parker intermarried on the 12th day of August, 1840. Several persons, claimed to be debtors to the defendant R. Skinner, were made defendants. The complainant prayed for a decree that the defendant, R. Skinner, pay the amount of his debt and costs, and that the other defendants be decreed to pay to the complainant for that purpose any sums due to R. Skinner from them, and that Nancy Skinner be decreed to pay to the complainant any sums due from her to R. Skinner, for or on account of any sale or lease, or use and occupation of any property, real or personal, received by her from R. Skinner, or from any person for him ; that the assignment from R. Skinner to Dan Pond be set aside ; that Pond be decreed to apply portions of the assigned fund, appropriated for payment of claims otherwise paid and secured, in payment of the complainant's debt ; and, if necessary, that an account be taken of the debts due by the other defendants to R. Skinner.

Nancy Skinner in her answer set forth that on the 12th day of August, 1840, the day of her marriage with R. Skinner, she was seised and possessed of both real and personal property ; that on the 5th day of August, 1840, she and said Skinner, in contemplation of their marriage, and in consideration thereof, and for the purpose of securing to her, her own individual property free and clear from any right or title thereto which the said Skinner might acquire therein by such marriage, &c. entered into an ante-nuptial contract, by which the separate property and estate of the defendant, Nancy Skinner, which she possessed at the time of said marriage, and which she might thereafter acquire, with the rents, income and profits thereof, and the right of disposing of, and managing and controlling the same without the consent of R. Skinner, was secured to her ; and that by the said agreement the individual property of the said R. Skinner was also secured to him, free and clear from any right thereto, or interest therein, which Nancy Skinner might acquire therein by said marriage, The defendant Nancy Skinner, in her answer, admitted that on the 10th day of August, 1840, she purchased from R. Skinner personal property for the price of $4558,61.　But she denied the allegations of the bill in relation to the sale, and alleged that nearly all the property was present at the sale, and that she immediately took possession of the property and has had the possession and control thereof ever since; and that before the 15th of May, 1841, she paid the said R. Skinner on account thereof, in part payment, $1193,80, and that afterwards, and before the filing of the complainant's bill, she paid to Dan Pond the balance of the purchase money in full, it having been assigned by R. Skinner to Pond, by the assignment set forth in the bill of complaint; and that the money so paid to R. Skinner and Dan Pond was paid out of her own separate estate. And the defendant Nancy Skinner, in her answer, admitted that she took a lease from R. Skinner for two years from the 1st of April, 1840, at the rent of $250 a year, but she denied that the rent for the premises leased to her by R. Skinner was below the fair value thereof, or was unpaid ; and she averred that

the rent was the full value of the premises, and that previous to the filing of the complainant's bill, she paid the rent in full to Dan Pond, to whom it had been assigned by R. Skinner, by the assignment aforesaid. And she averred that Dan Pond paid on account of the liabilities assumed by him for R. Skinner $5762,30; and that after he had made such payment he assigned the judgment given to him by R. Skinner, to her, for a full and valuable consideration; that she had caused an execution to be issued on such judgment, and the real estate of R. Skinner to be sold thereon, and that at such sale, which was on the 20th of November, 1845, she became the purchaser for $3824. And she denied that she was indebted to R. Skinner in any sum whatever, or that she had any property in her possession in which he had any interest. And she averred that ever since her marriage, she had had the exclusive possession and control of her separate real and personal property, and of the income thereof, and had appropriated the same to her own use and benefit; and that R. Skinner had not at any time had the possession thereof, except when acting as her agent and under her express directions.

Dan Pond, in his answer, alleged, that the mortgage given by him to R. Skinner, on the 1st of January, 1841, was unaccompanied by any bond, that on the 2d of April, 1841, he paid the full amount of the mortgage to R. Skinner; and that R. Skinner discharged the same, by acknowledging satisfaction thereof. He admitted that R. Skinner gave him a judgment for $6000; that the same was to secure him for liabilities he had incurred for R. Skinner, as surety or endorser; and alleged that he had paid of such liabilities, $5762,30; and that after such payment he assigned the judgment to Nancy Skinner, as stated in her answer. He alleged that previous to the filing of the complainant's bill he collected, and realized from the property assigned to him by R. Skinner, various sums of money which he applied in pursuance of the provisions of the assignment to him. He denied all fraud in the making and acceptance of the said assignment.

The defendant R. Skinner, in his answer, made substantial-

ly the same allegations as were contained in the answers of Nancy Skinner and Dan Pond. He denied all fraud in making the assignment to Dan Pond. He set forth the ante-nuptial agreement, entered into between him and Nancy Skinner. He averred that the personal property sold to Nancy Skinner, was sold for its full value. He also alleged, that on the 5th of May, 1842, he executed and delivered to John Barker, the receiver in the cause of William Woods v. R. Skinner and others, an assignment of all his personal property, and that since that time, he had not acquired any property whatever.

The defendant R. Skinner died on the 4th of January, 1848, after the proofs in this suit were closed; and the suit was revived against his administrator.

*B. F. Agan & Wm. Hay,* for the plaintiff.

*C. Stevens,* for the defendants.

*By the Court,* PAIGE, J. Since the decision of *Bradish* v. *Gibbs,* (3 *John. Ch.* 522,) the validity, in equity, of an ante-nuptial agreement between husband and wife, without the intervention of trustees, by which the wife reserves to herself the power of disposing of her own property, either real or personal, during coverture, has not been doubted. Chancellor Kent in that suit reviewed all the English cases on the subject, and says (*Id. p.* 544,) that the case of *Rippon* v. *Dowling,* (*Amb.* 565,) puts the question completely at rest. In the case of *Rippon* v. *Dowling,* it was held by Lord Camden, that the ante-nuptial agreement was equally valid, whether it reserved to the wife the power of disposing, during coverture, of either a legal or a trust estate. Lord Hardwick, in *Peacock* v. *Monk,* (2 *Ves.* 190,) doubted whether a valid reservation of a power of disposition, by a wife over her real estate, could be made in any other way than by means of a previous conveyance to trustees in trust for purposes to be declared during her coverture, by deed or will, or by a conveyance to uses and reserving to herself a power over the use. But all doubts on the subject, have long since been re-

moved.   And it is now no longer deemed necessary that the legal estate should be vested in trustees, to enable a feme covert to dispose of her estate in equity.   A mere agreement entered into, before marriage with her husband, that she should have the power to dispose of her real and personal estate during coverture, will enable her to do so.   (3 *John. Ch. Rep.* 547. 2 *Kent's Com.* 171, 172.)

Although such an agreement becomes extinguished, at law, by the subsequent marriage, yet equity supports it, and will compel the husband to perform it.   A wife may in equity contract with her husband, even by parol, after marriage, for a transfer of property from him to her, provided it be for a bona fide and valuable consideration.   And she, having separate property, may purchase, by a sale of it, other property, even of her husband, and have it limited to her separate use.   (*Livingston* v. *Livingston*, 2 *John. Ch.* 537.   2 *Kent's Com.* 166. *Lady Arundell* v. *Phipps*, 10 *Ves.* 146, 149.   *Bullard* v. *Briggs*, 7 *Pick.* 533.   2 *Kent's Com.* 173, 174.   *Garlick* v. *Strong*, 3 *Paige*, 440.)   And such purchase will be good against prior as well as subsequent creditors. ( *Wickes* v. *Clarke*, 8 *Paige*, 162.   10 *Ves.* 140.)   A husband, although in embarrassed circumstances, may voluntarily settle upon his wife personal estate, which comes to her by descent from her relatives, if it is not more than a reasonable provision for the wife and her children, and is one which the court of chancery would have directed the husband to make, upon a bill filed against him, by his wife, to protect her equitable claim to a support for herself and her children out of the same.   And such voluntary settlement will be sustained, as against the creditors of the husband. ( *Wickes* v. *Clarke*, 8 *Paige*, 161.   2 *Kent's Com.* 173.   *Partridge* v. *Havens*, 10 *Paige*, 618.)   Although a deed from a husband directly to his wife, is void in law, yet where the conveyance of the husband is for the purpose of making a suitable provision for the wife, equity will lend its aid to enforce the provision, where the rights of creditors do not interfere. (*Shephard* v. *Shephard*, 7 *John. Ch. Rep.* 86.)   The relinquishment of dower by the wife, in land sold by the husband,

Strong *v.* Skinner.

is a sufficient consideration for an agreement of the husband, that she shall receive a portion of the purchase money, as her separate property, free from his control; and such agreement will be sustained in equity. (*Garlick* v. *Strong*, 3 *Paige*, 440.)

A *feme covert*, with respect to her separate property, is in equity, considered as a *feme sole*. In *The Methodist Episcopal Church* v. *Jaques*, (3 *John. Ch. Rep.* 77,) Chancellor Kent held that she was to be considered a feme sole *sub modo* only, or to the extent of the power clearly given to her by the marriage settlement. But on the review of this case in the court of errors, (17 *John.* 548,) it was in substance declared, that a *feme covert* was absolutely a *feme sole* in respect to her separate property, where she was not specially restrained, by the instrument under which she acts, to some particular mode of disposition : and it was held, that although a particular mode of disposition is specifically pointed out, it will not preclude her from adopting any other mode of disposition, unless there are negative words restraining her power of disposition to the very mode so pointed out.. At page 585 of that case, Platt J. says : " The ante-nuptial agreement qualifies the marriage contract, so that the wife retains all the rights which she would have exercised over the property as a *feme sole ;* except so far as she has in express terms incapacitated herself by that instrument." And at page 592, he says, " If a married woman be permitted by a settlement to act as a *feme sole* in regard to her property, it is perfectly reasonable that her acts, declarations, and confessions freely made, should be allowed to have the same effect in regard to the rights and interests of others, as if she were in reality a *feme sole.*"

A *feme covert* may, either in person or by her legally authorized agent, bind her separate estate with the payment of debts contracted for the benefit of the estate, or contracted for her own benefit, upon the credit of the estate ; and her separate estate is, in equity, chargeable with her debts contracted upon the credit of that estate, to the same extent that the estate of a *feme sole* is chargeable with her debts, at common law. (*North Amer. Coal Co.* v. *Dyett*, 7 *Paige*, 15.) Although a *feme covert*

is incapable of charging herself, at law, and equally incapable
in equity of charging herself, personally, with debts, yet the bet-
ter opinion is, that separate debts, contracted by her expressly
on her own account, shall in all cases be considered an appoint-
ment or appropriation for the benefit of the creditor, as to so
much of her separate estate, as is sufficient to pay the debt, if
she be not disabled to charge it, by the terms of the deed of set-
tlement. (*Per Cowen, J., Gardner* v. *Gardner,* 22 *Wend.*
528. 2 *Story's Eq.* § 1397 *to* 1401. *Murray* v. *Barlet,* 4
*Sim.* 82; *S. C.* 3 *Mylne & Keen,* 209, *per Lord Chan.
Brougham.*) Chancery considers the debt as a valid charge
pro tanto, and will at least enforce its collection specifically,
by fixing it as a lien upon the separate estate. (*Per Cowen, J.,*
22 *Wend.* 528. *Owens* v. *Dickenson,* 1 *Craig & Phil.* 48.)
The wife may contract such debt directly to her husband. In
such case she will be considered as acting as a *feme sole,* or under
a power of appointment in favor of her husband. (*Gardner* v.
*Gardner,* 22 *Wend.* 529, *per Cowen, J. Heatley* v. *Thomas,*
15 *Ves.* 596.)

   The above authorities conclusively establish the validity of
the ante-nuptial agreement of the defendants, Reuben and
Nancy Skinner. By that agreement the parties mutually
agreed that their respective property, both real and personal
of every kind, character and description, which they should
have or be entitled to at the time of the consummation of their
intended marriage, should be and remain after said marriage,
as it was before, the individual and separate property of that
party to whom it belonged at the time of the marriage, and
not in any manner to be affected thereby; and that all the
property, both real and personal, acquired by either party, by
gift, devise, legacy, or by any other means whatever after said
marriage, should also be and remain the individual and sepa-
rate estate and property of the party so acquiring the same, in
the same manner, and to the same extent, as if such marriage
had not taken place. And the parties further mutually agreed
that they should respectively have the right and liberty of dis-

Strong *v.* Skinner.

posing of their individual and separate property, and to purchase other property at their discretion, without the assent of the other, as fully as they might do if sole and unmarried; and that neither party should, by virtue of said marriage, acquire any right or title in the property or estate of the other.

By virtue of this agreement, Nancy Skinner, after her marriage with Reuben Skinner, was absolutely a feme sole, in respect to her separate property, and she retained all the power over it which she could have exercised as a feme sole, if her marriage had never taken place. Her power of disposition continued absolute and entirely uncontrolled. Her husband expressly agreed, that her separate property should not in any manner be affected by the marriage, and that she should have the same right of disposing of her separate property, and of purchasing other property without his assent, that she would have had, if she had continued sole and unmarried. She, under this agreement, had the undoubted right not only of selling her property but with the proceeds thereof, of purchasing other property, and to hold the substituted property, as her separate estate, free from the control, or debts, of her husband. She could with her separate estate, have purchased even from her husband, any portion of his property, provided the purchase was bona fide, and for a valuable consideration; and she could have held it as of part a her separate estate, against his prior as well as subsequent creditors. She, with respect to her separate estate, was a feme sole, as well in her dealings with her husband, as with the rest of the world. She could have purchased from him, or sold to him, as a feme sole. She could have borrowed money from him on the credit of her separate estate, and have charged such estate with its repayment, in equity. (*Gardner* v. *Gardner,* 22 *Wend.* 529.) She could have sued or been sued by her husband, or have become a substantial party against, or at the suit of, others. (*Dyett* v. *North American Coal Co.* 20 *Wend.* 573, *in error, per Cowen, J., S. C.* 7 *Paige,* 9. 2 *Kent's Com.* 163, 4.) These observations, and the authorities cited in support of them, clearly show that Mrs. Skinner had a perfect right, and full authority, to purchase, with

---

Strong *v.* Skinner.

---

her separate estate, either mortgages or judgments against her husband, and to hold such securities as a part of her separate estate; and to enforce their collection by a sale of the mortgaged premises, or of the lands subject to the lien of the judgments. And at the sale she had the right to purchase, in her own name, the real estate of her husband, and to hold the land so purchased, as a part of her separate estate. Equity will sustain such purchase, and will protect the real estate purchased, from both her husband and his creditors. Mrs. Skinner therefore had a right to purchase with her own separate estate, the judgment of Dan Pond against her husband, and to sell her husband's real estate under the same, and to become herself the purchaser at the sale. The sale, it seems, was on the 20th of November, 1845. And if the lands sold have not been redeemed, she is now at liberty to take the sheriff's deed for the same, founded on the sheriff's sale. The complainant has no claim, in equity, to have either this sale declared void, or to compel Mrs. Skinner to account for the value of the land purchased by her under the execution. The sale was a judicial sale at public auction. No objection is made to its fairness. If the lands sold for a sum below their value, the complainant should have redeemed, as a judgment creditor. Or he might have prevented a sacrifice of the property, by attending the sale and bidding it up to its full value.

The only objections made in the bill, to the sale of the personal property to Mrs. Skinner, by R. Skinner, previous to their marriage, are, that no note or security was taken by the latter therefor; that the property was not present at the sale; that the sale was not accompanied by any change of possession; and that the consideration, or the greater part thereof, remained unpaid. These allegations are denied in the answer of Mrs. Skinner; and she alleges that nearly all the property was present at the sale; that she immediately took possession of the property, and has had the possession thereof ever since; and she alleges that she has paid out of her separate estate, the whole of the purchase money (being $4558,61,) agreed to be paid therefor. There is no allegation in the bill that the prop-

erty was sold either for an inadequate price, or with any intent to defraud creditors. There is no evidence in the case, establishing the allegations in the bill, or overthrowing those in the answer. We must therefore, under the circumstances, assume that the sale to Mrs. Skinner was a valid sale ; and that the consideration money has been paid by her in full, out of her separate estate, to her husband and to his assignee, as alleged in her answer. The answer appears not to have been put in under oath, but as a pleading it is a denial of the allegations in the plaintiff's bill, and imposed upon him the burden of establishing such allegations by proof. Mrs. Skinner in her answer, alleges, that previous to the 15th of May, 1841, she paid to Reuben Skinner, $1193,80, on account of the purchase money agreed to be paid for the personal property; and that she paid the balance in full to Dan Pond as the assignee of Reuben Skinner, before the plaintiff's bill was filed. And it is in evidence, that Reuben Skinner assigned this balance of the purchase money, due from Mrs. Skinner to Dan Pond, in trust for the payment of his debts. Assuming, then, that the purchase of the personal property in question, by Mrs. Skinner, was a valid purchase, and that she has paid the whole consideration money therefor, out of her separate estate, the property so purchased must be held to form a part of her personal estate ; and it cannot be made liable for the payment of her husband's debts.

I am inclined to believe that the lease executed by R. Skinner to Mrs. Skinner, on the 10th of August, 1840, became extinguished by their subsequent marriage. And I think it cannot, within the meaning of their ante-nuptial agreement, be deemed a part of the property which she had, or owned, at the time of her marriage. The lease was not taken and accepted by her as an investment of money belonging to her. She advanced or paid to R. Skinner no part of her funds or property, for the lease. The lease was substantially nothing but a mutual contract by which R. Skinner agreed, that she should have the use and occupation of the demised premises for two years, and she, in consideration of such agreement, agreed to pay for

such use and occupation, an annual·rent. (1 *Hil. Ab.* 129. 7 *Cowen,* 326. 3 *John.* 44.) If this lease formed no part of Mrs. Skinner's separate estate within the meaning of the ante-nuptial agreement, and was substantially nothing more than an executory contract, it was extinguished by such marriage. But be this as it may, Mrs. Skinner denies in her answer the allegation in the bill, that the rent reserved by the lease was unpaid, and she alleges that she has paid to the assignee of her husband the whole of such rent. And the plaintiff has furnished no evidence in support of the allegation in his bill, that the rent remains unpaid. The plaintiff has no claim against Mrs. Skinner, upon the ground that the rent was an inadequate consideration for the use of the demised premises. Although Mrs. Skinner's estate was secured to her separate use, her husband was notwithstanding bound to maintain her during coverture; and he could not, nor can his creditors, make the expenses of her maintenance chargeable on her separate estate. (*Methodist Episcopal Church* v. *Jaques,* 1 *John. Ch. Rep.* 456.) If Mrs. Skinner received the rents and profits of her husband's real estate, and expended them in her own mainte-nance, she had a right to do so ; or if she received them with his assent, to be expended by her at her pleasure, her separate estate cannot be made chargeable with such rents and profits, unless they were received under an agreement with her husband expressly as a loan from him to her, on the credit of her separate estate. · There is no pretence that the rents and prof-its of the real estate were so received by Mrs. Skinner. A judg-ment creditor can acquire no specific lien on the rents and profits of the land of his debtor, except by the filing of a creditor's bill founded on the return of an execution unsatisfied. (10 *Paige,* 598.) After acquiring such lien he cannot compel the debtor to account for the rents and profits received and expended by him previous to the filing of his bill; and certainly he can-not require such an account from the debtor's wife, who has received and expended such rents and profits with or without the assent of her husband.

All the mortgages, decrees and judgments against Reuben

Skinner, which have been purchased by Mrs. Skinner with her own separate funds and estate, belong to and form a part of her separate estate, and are valid and subsisting securities in her hands. And, being regarded in equity as a feme sole in respect to her separate estate, she has a right to hold the securities against her husband purchased by her with her own separate funds and property, for the whole amount due thereon, irrespective of the sums actually paid by her for the same.

As Mrs. Skinner has succeeded, as to every claim made against her, or her separate estate, the plaintiff must pay to her her costs.

The assignment of Reuben Skinner to Dan Pond is fraudulent and void on its face. It contains a provision authorizing the assignee, in his discretion, to change the order of the preferences given therein to the preferred creditors. It also makes provision for only a part of the creditors of the assignor, and, without making any provision for the rest of the creditors, directs the assignee to re-assign to the assignor the surplus, if any remains after satisfying the debts provided for in the assignment. Each of these provisions renders the assignment fraudulent and void on its face. (*Barnum* v. *Hempstead*, 7 *Paige*, 568. *Boardman* v. *Halliday*, 10 *Id.* 223. *Goodrich* v. *Downs*, 6 *Hill*, 438. *Grover* v. *Wakeman*, 11 *Wend.* 203.) That several of the debts preferred in the assignment had been previously secured by either judgment or mortgage, does not affect the validity of the assignment. If these debts are paid out of the assigned property, the real estate upon which they are liens, will be left without hindrance, to be resorted to by the other creditors, for the payment of their debts. If these debts were imperfectly secured, it was certainly not objectionable to provide for them in the assignment. But if they were amply secured, a provision for their payment, in the assignment, would not, in my judgment, render the assignment in law fraudulent and void. In *Besley* v. *Lawrence*, (11 *Paige*, 581,) a debt amply secured by the assignment of a bond and mortgage, was preferred in an assignment, and no objection was made to the assignment on that ground. It was treated by the

chancellor as the common case of a creditor having two funds of his debtor, to which he could resort for payment. In such a case, if there is another creditor who has a specific or general lien on one of the funds only, for the payment of his debt, equity will compel the former creditor to resort to that fund, to which the lien of the other does not extend. As there is no evidence of actual fraud, on the part of the assignee, in accepting the assignment, he is not to be held accountable for that part of the proceeds of the assigned property, which he has paid over to the preferred creditors pursuant to the provisions of the assignment, previous to the filing of the plaintiff's bill. The assignee is also to be allowed his necessary expenses and disbursements in collecting the debts assigned, and in converting the assigned property into money. ( *Wakeman* v. *Grover*, 4 *Paige*, 42, 3.)

As a prior specific lien upon the property of Reuben Skinner was acquired by the filing of the creditor's bill in the suit of William Woods v. Reuben Skinner, Dan Pond and others, the debt and costs in that suit, which now belong to Mrs. Skinner, are entitled to a preference in payment over the debt of the plaintiff in this suit, out of the things in action and other property of Reuben Skinner on which Woods obtained a specific lien by the filing of his creditor's bill.

The plaintiff has produced no evidence in support of the allegations in his bill that the mortgage given by Dan Pond to R. Skinner remained unpaid, and that its discharge by R. Skinner was without consideration, and was fraudulently made. Both Pond and R. Skinner, in their answers, allege that this mortgage was paid in full, and discharged on the 2d of April, 1841. The plaintiff is therefore not entitled to a decree against Dan Pond, directing him to account to the creditors of R. Skinner for the amount of this mortgage.

A decree must be entered declaring that the ante-nuptial agreement entered into between Reuben and Nancy Skinner is valid, and that it is binding in equity upon Reuben Skinner, and upon his creditors, heirs, devisees and personal representatives; that the mortgages and judgments against Reuben

Skinner purchased by Nancy Skinner with her own separate funds and estate, are valid and subsisting securities in her hands, and that they form a part of her separate estate; and that she has a right to enforce the collection of the same. And if any injunction is now in force restraining the collection or payment of such mortgages and judgments, the decree must direct that it be dissolved. The decree must also direct, that the plaintiff pay to Mrs. Skinner her costs in this suit, to be taxed, and that she have execution therefor. The decree must also direct that the assignment of Reuben Skinner to Dan Pond, be set aside as fraudulent and void as against the plaintiff. And it must direct a reference to a referee to take an account of the proceeds of the assigned property and effects in the hands of Dan Pond ; after allowing him for all payments made to the creditors of Reuben Skinner, pursuant to the provisions of the assignment, previous to the filing of the plaintiff's bill, and his (the said Pond's) necessary expenses and disbursements in collecting the debts assigned, or in converting the assigned property into money ; and that the referee allow interest as is just. The decree must also direct the referee to ascertain and report the amount due the plaintiff, for principal and interest on his judgment. And it must declare that the debt and costs in the creditor's suit of William Woods v. Reuben Skinner and others, are entitled to a preference in payment out of the assigned and other property of R. Skinner, over the debt of the plaintiff. And the referee must report the name of a proper person as receiver, and he must also report whether the person appointed receiver in the suit of William Woods v. R. Skinner and others, is not a proper person to be appointed receiver in this suit. The decree must direct that all further questions and directions be reserved, until the coming in of the referee's report, or until the further order of the court.