## SUPREME COURT.

SARAH W. MIDGELEY agt. THOMAS SLOCOMB and another.

Where an *assignment for the benefit of creditors*, provides that the trust is "to apply the proceeds towards the payment of the persons or corporations, holders now or at any future time, for the time being," of a specified class of notes of the assignors, the meaning is that the assignees shall pay debts outstanding at the time of the execution of the trust; and not that they should make a *distribution* on the basis of the original indebtedness.

Consequently, where a bank, a creditor holding notes belonging to the class mentioned in the assignment, to a large amount, which were secured in part by a pledge of notes of other parties, which latter notes had been collected by the bank : *held*, that the law applied these collections to the payment of the principal debt, so that the bank had ceased to be the holder of the notes thus paid, and was not entitled to a dividend on the basis of the original indebtedness.

*Kings Special Term, February*, 1867.

*Before* JASPER W. GILBERT, *Justice.*

THIS action was brought by the plaintiff as a creditor of the firm of Wilson, Midgely & Jennings, to compel the defendants to account, as assignees of the firm.

The action was referred to Judge Greenwood, to take the account, adjust the claims of the respective creditors, and report.

Upon the hearing before him, it appeared that the Park

National Bank held an indebtedness against the assignors at the time of the assignment of $23,500, for money borrowed, which had been reduced by collections from notes held as collateral at the time of the assignment to $9,573.25. The bank claimed the right to exhaust the collaterals, and that the dividend under the assignment must be on the amount due at the date thereof, $23,500, and not on the balance due them at the time of the dividend, $9,573.25; they having the right to two funds.

The referee decided against the claim of the bank, and ordered a dividend on the amount due at time of distribution, and also ordered a sale of the collaterals.

A motion was made to confirm the referee's report.

BARLOW & HYATT, *for the National Park Bank, opposed,*

Citing *Miller's Case on Appeal* (11 *Casey*, 35 *Penn.*), and other similar cases from the English Reports.

MESSRS. WINSLOW, *for plaintiff.*
PLATT, GERARD & BUCKLEY, *for defendants.*
T. CRONIN, *for Smythe, Sprague & Cooper, in support of referee's report.*

I. The doctrine of application of payments, has full force between the assignors and the Park Bank.

The assignors were borrowers of the bank, and secured them by depositing collaterals. As they were collected, they must apply in reduction of the assignor's debt. This principle has application to the relation of the assignors to the bank in every aspect, and in all its legal bearings. (*See Stone* agt. *Seymour,* 15 *Wend.* 19; *Seymour* agt. *Van Slyck,* 8 *Id.* 403; 19 *Id.* 19.)

II. The court will direct the payments received from the collaterals to be applied for the benefit of all the creditors interested in the assigned fund, as well as for the benefit of the debtors (*Baker* agt. *Stackpole,* 9 *Cow.* 420).

III. In this case the creditor has actually made his *elect-*

*ion*, and applied the payments received from the collaterals to the reduction of the original debt. Having made an election, they are bound by it, and cannot now say that the assignors still owe them the original debt. (*See Allen* agt. *Culver*, 3 *Denio*, 284.)

IV. In this case the assignors made an application by the terms of the trust contained in the *assignment*, and provided that the Park Bank should be paid *pro rata* upon the notes of which they were holders; *i. e.*, notes *unpaid*, and *existing liabilities* against the assignors, at the time of a dividend from the assigned assets.

The recital in the assignment is, " appropriating their real and personal property of every kind and description, towards the payment of their debts and obligations, in the order of preference and priority hereinafter declared, and for the purpose of securing to their creditors a *just division* of the property of said parties of the first part." Thus providing against any inequitable rule of marshaling assets, or applying money derived from collaterals, or receiving dividends without deducting payments derived from collaterals.

V. The trust in the assignment further provides for the payment of the debts mentioned in schedule B, including the debts due Park Bank, as a secured provision " towards the payment of the persons or corporation holders, now, or at any future time, for the time being, of all notes or other obligations of the parties of the first part." Thus limiting the assigned fund to a *pro rata* distribution from it to the holders of notes unpaid, at the time of the distribution of the assigned assets.

The Park Bank cannot now be the holder of notes paid in part by the assignors from collaterals.

These notes have been paid, and are not now held in the legal sense of the term, and could not be recovered against the assignors. They have been paid in part, and the dividend can only be on the balance due at the time of declaring it by the referee.

The Park Bank could not now recover of the assignors the amount of those notes already paid from moneys rea-

lized from the collaterals. They are not held by them in law; they are only physically in possession of the bank.

Hence they can only receive a dividend upon the amount now due, after deducting payments received through collaterals.

As to who is deemed a lawful holder of notes: (*See Story on Promissory Notes*, § 115, *p.* 122.)

ʼ When a note is received as collateral security for a pre-existing debt, and subsequently paid, the person receiving payment ceases to be a *bona fide* holder of the note. (*See Story on Promissory Notes, aud cases cited*, § 195, *p.* 222.)

VI. If the court can by the application of reasonable and fair rules of construction to the terms of the trust in the assignment, prevent the Park Bank from receiving an unequal share of the funds in the hands of the assignees, they will be bound to do so, and require them to abide by the directions of the assignors to pay *pro rata*, and declare the payments from collaterals to be *pro tanto* a reduction of their debt. (*Story on Promissory Notes*, § 411, *and cases cited.*)

GILBERT, J. I take it to be clear law as well as equity, that when a debtor makes a general assignment of his property, upon trust, to pay his debts, and therein prefers a creditor to whom he had before the assignment given security for the payment of the debt due him, such creditor is entitled to the benefit of the collateral security, as well as his interest as a *cestui que trust*, until such debt shall have been fully paid. If the collateral security be sufficient to pay the debt, equity, in order to protect creditors who have no lien on it, will compel the creditor holding the collateral security to resort to that in the first instance, and even if it be insufficient. The same proceeding may be decreed when it will not trench upon the rights, or operate to the prejudice of the creditor entitled to the double fund. (*Story's Eq. Jur.* § 633; *Adams' Eq.* 272; *Strong* agt. *Skinner*, 4 *Barb.* 559; *Besley* agt. *Lawrence*, 11 *Paige*, 581.)

But as was said by Lord COTTENHAM, in *Mason* agt. *Bogg* (2 *My. & Cr.* 443), a creditor who thus has a double secu-

rity, has a right to proceed against both, and to make the most he can of both. If a dividend under the assignment so reduces the debt that the collateral security will more than pay it, the only remedy of the assignors, or of the other beneficiaries, is to redeem. (*Story's Eq. Jur.* § 564-6 ; *Lewin on Trust,* 485 ; *Brinkerhoff* agt. *Marvin,* 5 *J. Ch. R.* 320 ; *Hays* agt. *Ward,* 4 *Id.* 132 ; *Woolcock* agt. *Hart,* 1 *Paige,* 185 ; *Aldrich* agt. *Cooper,* 8 *Ves.* 382, *and notes in Lea. Ca. in Eq.* 3 *Am. ed.* 276, *et seq.*). The Park Bank, therefore, has a right to receive its share of the proceeds of the assigned property, and to retain and enforce the collateral securities which it holds until the debt due it shall have been paid. The question is, what is its share of the fund now in the hands of the assignees? This depends on the interpretation of the instrument itself, and cannot be determined upon any notion of equity or equality, for the court has no power to create or order a new trust.

The trust is " to apply the proceeds towards the payment of the persons or corporations, *holders now* or at any future time, for the time being," of a specified class of notes of the assignors. At the date of the assignment the bank held notes belonging to this class, amounting to $23,500, which were secured by a pledge of notes of other parties. The bank has since collected $16,330.98, on account of these collaterals, leaving due $9,573,25. The law applied these collections to the payment of the principal debt, so that the bank has ceased to be the holder of the notes thus paid. I think the meaning of the assignment is, that the assignees shall pay debts outstanding at the time of the execution of the trust, and not, as was contended by the counsel for the bank, that they shall make a distribution on the basis of the original indebtedness.

The referee's report on this point is confirmed. But the referee erred in relation to the proposed sale of the collaterals still held by the bank. There may be a decree for the sale of the interest of the assignors in them. But the court cannot interfere with the right of the bank to collect them.

A decree will be prepared and settled.