STATE OF MISSOURI, TO THE USE OF SUSAN P. HEPBURN, Respondent, *v.* HENRY F. MUELLER ET AL., Appellants.

### March 8, 1881.

A deed of trust creating a lien upon personalty for an indefinite period, the natural operation of which is to benefit the grantor, is fraudulent and void as to his creditors.

APPEAL from the St. Louis Circuit Court, THAYER, J.

*Reversed and judgment.*

GEORGE M. FORSTER and G. A. FINKELNBURG, for the appellants : The deed of trust from John R. Coleman to James M. Carpenter, trustee, is void in law, because it is a conveyance to the grantor's use and intended to hinder, delay, or defraud creditors.—*Bigelow* v. *Stringer*, 40 Mo. 195 ; *Doyle* v. *Smith*, 1 Cald. 15 ; *Smith* v. *Ely*, 10 Nat. Bank. Reg. 553 ; *Wood* v. *Lowrey*, 17 Wend. 492 ; *Davis* v. *Ransom*, 18 Ill. 396 ; *Peiser* v. *Peticolas*, 50 Texas, 638 ; *Mobley* v. *Leets* (Sup. Ct. Ind. 1878), 6 Reporter, 13 ; *Connah* v. *Sedgwick*, 1 Barb. 210 ; *Hart* v. *Crane*, 7 Paige, 37 ; *Cator* v. *Collins*, 2 Mo. App. 225. The deed of trust offered in evidence is inoperative to convey property ac-

quired subsequent to its execution. — *Wright* v. *Bircher*, 5 Mo. App. 322; *Ranlett* v. *Blodgett*, 17 N. H. 298; Herm. Chat. Mort., sects. 46, 47; *Walter* v. *Wimer*, 24 Mo. 63; *Meachem* v. *Stearns*, 9 Paige, 398; *Edgell* v. *Hart*, 9 N. Y. 213; *Mittnacht* v. *Kelley*, 46 How. 457. Record of a deed of trust of personal property consisting of a stock in trade, which is changing by sale and purchase, and being used for the purposes of traffic, the use of which consists in its consumption, will not operate as a substitute for actual change of possession. — *Robinson* v. *Elliott*, 22 Wall. 513; *In re Manley*, 2 Bond, 261; *Horton* v. *Williams*, 21 Minn. 187; *Collins* v. *McElroy*, 16 Ohio, 547; *Harrison* v. *Abbey*, 7 Ohio St. 218; *Freeman* v. *Rawson*, 5 Ohio St. 1; *Flannagan* v. *Wood*, 33 Vt. 332; Thomas on Mort. 479; *Woods* v. *Bugbe*, 29 Cal. 466.

T. A. & H. M. POST, with whom is WILLIAM PRESTON, for the respondent: The record of a chattel mortgage is equivalent to transmutation of title. — *Miller* v. *Bascom*, 28 Mo. 355; *Miller* v. *Whitson*, 40 Mo. 87; *Feurt* v. *Powell*, 62 Mo. 526. Power in the trustee to add to the stock does not render the deed void *per se*. — *Voorhis* v. *Langsdorf*, 31 Mo. 452; *The State* v. *Byrne*, 35 Mo. 147. A fraudulent intent should be apparent. — *The State* v. *Benoist*, 37 Mo. 509. In order to avoid a deed for fraud, the case shown must be inconsistent with honesty and fair dealing. — *Rumbolt* v. *Parr*, 51 Mo. 598. And see *Dallam* v. *Renshaw*, 26 Mo. 544; *Cason* v. *Murry*, 15 Mo. 383; *Henderson* v. *Henderson*, 56 Mo. 555; *Ames* v. *Gilmore*, 59 Mo. 543. The mortgage, doubtless, did " hinder and delay " their claims to property, on which the lien legitimately fastened. Such delay inevitably results from every preference of one over other creditors. — *The State to use* v. *Benoist*, 37 Mo. 509, 510; *Gates* v. *LeBaume*, 19 Mo. 29; *The State to use* v. *Laurie*, 1 Mo. App. 377; *Kuykendall* v. *McDonald*, 15 Mo. 416.

BAKEWELL, J., delivered the opinion of the court.

On April 25, 1879, the sheriff by virtue of an execution in favor of Meyer Bros. & Co., and against Coleman, levied upon the contents of a drug-store. Whereupon Mrs. Hepburn and Carpenter claimed the property as owners; an indemnifying bond was executed to the sheriff, and the present action is upon this bond. The cause was submitted to the court, a jury being waived, and there was a finding and judgment for plaintiff.

The evidence showed that Coleman was largely indebted to several creditors, some of whom were pressing for settlement. Amongst his creditors was Mrs. Hepburn, to whom he owed $4,000 for rent of the drug-store. Coleman was insolvent. He made a settlement with Mrs. Hepburn by which he gave her, in full of the rent due, notes to his own order, all dated January 1, 1879; one at three months, for $300; three notes at four, six, and eight months respectively, for $400 each; and two notes at ten and twelve months respectively, for $500 each; the sum of the face of the notes being $2,500. These notes were secured by a deed of trust executed by Coleman to Carpenter, as trustee of Mrs. Hepburn, which conveyed the stock, fixtures, and good-will of the drug-store, in trust, upon the following terms : —

Carpenter, the trustee, is to continue the business at the same place, sell goods in the ordinary course of business, and receive the proceeds, out of which he is to pay, first, rent for the premises to Mrs. Hepburn, at the rate of $60 per month; next, wages of such employees as may be employed suitably and necessarily about the business ; next, compensation to the trustee, at the rate of ten per cent on the receipts of the business ; next, insurance and necessary expenses, and such amount as may be required for the purchase of articles necessary to keep up the stock and fixtures to their present value ; and the remainder of the receipts is to be applied to the payment of the notes in the order in which they mature. If the notes are duly

paid, and the aggregate of expenses for no period of thirty consecutive days exceeds the aggregate of receipts from the business, then the deed is to be void; if the notes are not duly paid, or the receipts for any thirty days do not pay the expenses for that period, then the trustee may, at his discretion, sell the property and good-will at auction, after advertisement, to pay costs, commissions and the notes, any surplus to be paid to the grantor in the deed.

The deed of trust was at once recorded; but there was nothing else to indicate to the general public any change of possession; the same clerks did the same business, in the same way, under the old signs and labels. No inventory was taken until after the levy. Carpenter called every day, and kept accounts in his own way. He controlled the business without any interference from Coleman. Bills were made out, accounts kept, and goods bought in Carpenter's name. Meyers Bros. & Co. made bills to Carpenter as trustee, after the deed of trust, and before their levy. The sales were daily reported to Carpenter, who replaced such goods as were necessary to keep the business in good running order. More goods were sold than bought, under his administration of the business. There was testimony that the sales, from January 8th, the date of the deed, to April 25th, the day of the levy, were $926, and that the purchases during the same period, were $240; the average being $8.60 per day, and the average of profit forty per cent. But it does not appear what was the net amount realized, after allowing for all expenses of running the business.

The court was asked to declare the deed fraudulent upon its face, and void as to creditors. This the court refused. Many instructions were given on either side, and many refused for defendants. It is not necessary to set them out.

Coleman, being insolvent, could not by any contrivance keep his creditors at arm's length. He might prefer one or

more creditors; but he could not keep off his creditors, or any of them, by a colorable conveyance, made partly to secure one creditor, and partly to preserve the property for Coleman.

Under the agreement, the stock might be kept up, the good-will of the store be preserved, for five years; Mrs. Hepburn got $60 a month for that period; the trustee his ten per cent; and then, when the notes were paid, and all other claims barred by the Statute of Limitations, the property might be turned over to Coleman intact, having been preserved to him by this conveyance made partly to his use.

The advantages to the grantor are obvious; and we think the conveyance void on its face. Goods purchased from the proceeds of the goods sold, were manifestly purchased for Coleman's benefit; and there was no time fixed for foreclosure; so that the arrangement might go on as long as it suited Mrs. Hepburn, Carpenter, and Coleman. The intention of all parties may have been excellent; but the arrangement is one which the law will not allow an insolvent debtor to make, when its effect will be to delay his creditors, or any of then.

It is unnecessary to review the cases in Missouri and elsewhere. It is indisputable that a deed to the use of the party making it, is void as against creditors; and that, where such a trust appears on the face of the conveyance, the courts will declare it void as a matter of law. In *Metzger* v. *Graham*, 57 Mo. 444, to which respondent specially calls our attention, the proceeds were all to go to the payment of the note secured; there was no provision for continuing the trade by the purchase of new goods and for payment out of the profits. That this deed under consideration delays creditors, is no objection to it; but it is bad, because its operation is not merely for the interest of the *cestui que trust*, but for the benefit, also, of the person making it. The trustee is to trade, not only for the benefit of the *cestui que trust*, but, to keep up the business, to keep

the trade to the old place for an indefinite period, to keep up the good-will of the business ; and, to carry out his intention, an attempt is made to create an elastic mortgage to cover new stock. There is no specific lien upon particular goods ; but the attempt is to create a lien which shall expand or contract as the stock varies. The stock must be kept up by the terms of the mortgage, and if the profits of the business are sufficient, may be perhaps increased, since there is no inventory and no valuation ; and when, in the course of trade, the notes are paid, property to the full value of that originally mortgaged, may be turned over intact to the insolvent mortgagor. He is to be allowed, by the intervention of a trustee, to hold his creditors off, and to do thus, indirectly, that which the law will not allow him directly to do.

The judgment will be reversed. It would be useless to remand the case. Judgment ought to be rendered here for the defendant upon the facts in evidence. It is so ordered. All the judges concur.