SEGER'S SONS, *Appellants*, v. THOMAS BROS.; JOHN M.
THOMAS, *Interpleader*.

DIVISION TWO.

| 107 | 635 |
|---|---|
| 53a | 115 |
| 107 | 635 |
| 117 | 364 |
| 107 | 635 |
| 56a | 251 |
| 107 | 635 |
| 122 | 431 |
| 57a | 110 |
| 107 | 635 |
| 65a | 71 |
| 107 | 635 |
| d69a | 470 |
| 107 | 635 |
| 142 | 499 |
| 75a | 147 |
| 107 | 635 |
| 151 | 89 |
| 78a | 682 |
| 79a | 221 |
| 79a | 222 |
| 107 | 635 |
| 83a | 441 |
| 107 | 635 |
| 158 | 449 |
| 159 | 226 |

1. **Partnership**: PAYMENT OF INDIVIDUAL DEBTS WITH FIRM PROP-
ERTY. All the members of a partnership may apply partnership
property to the payment of their individual debts, if done in good
faith and without a fraudulent design.

2. **Fraudulent Sale**: HINDERING AND DELAYING CREDITORS. Where
a creditor of a firm known by him to be insolvent buys its prop-
erty for a sum greater than his debt and gives his negotiable note
for the surplus payable one year after date, the transaction will
. have the effect of hindering and delaying the other creditors of
the firm and it is fraudulent as to them.

3. ——— : ———. : PREFERENCE. A bill of sale to a creditor which
not only prefers him, but also clothes him with the power to prefer
other creditors at his discretion, to the extent of the surplus over
and above his debt, is fraudulent and void, since a debtor has no
right to delegate his power to prefer one creditor to another to a,
third person.

4. ——— : ASSIGNMENT. The principles of law governing assignments
for the benefit of creditors are applicable to sales to creditors
where there is a surplus due the vendors.

5. ——— : FICTITIOUS CONSIDERATION. Where a part of the consid-
eration of a sale is fictitious and for that reason void, the sale as
a whole will be fraudulent and void as to creditors.

*Appeal from Macon Circuit Court.*—HON. ANDREW
ELLISON, Judge.

REVERSED AND REMANDED'

*C. P. Hess* and *B. R. Dysart* for appellants.

(1) The bill of sale on its face is fraudulent in
law and should have been so declared by the court.
*Elser v. Graber*, 6 S. W. Rep. (Tex.) 560; *Blum v.*
*McBride*, 5 S. W. Rep. (Tex.) 641; *Oppenheimer v.*

*Haeff*, 4 S. W. Rep. (Tex.) 562 ; *Mc Veigh v. Baxter*, 82 Mo. 518 ; *Holmes v. Braidwood*, 82 Mo. 610 ; *Meyberg v. Jacobs*, 40 Mo. App. 128 ; *Hanna v. Finley*, 33 Mo. App. 645 ; *Link v. Harrington*, 41 Mo. App. 635. (2) Plaintiff's demurrer to the interpleader's evidence should have been sustained at the conclusion of his case. The $750 note was clearly a fictitious claim, but put in as an absolute payment, and vitiates the bill of sale as to creditors of the firm. *State ex rel. v. Hope*, 102 Mo. 410 ; *Baldwin v. Short*, 26 N. E. Rep. 928 ; *Mc Veigh v. Baxter*, 82 Mo. 518 ; *Holmes v. Braidwood*, 82 Mo. 610 ; *Cords v. Straezer*, 8 Mo. App. 61 ; *Hanna v. Finley*, 33 Mo. App. 645 ; *Link v. Harrington*, 41 Mo. App. 635 ; *Van Raalte v. Harrington*, 101 Mo. 602 ; *Oppenheimer v. Haeff*, 4 S. W. Rep. 560 ; *Blum v. McBride*, 5 S. W. Rep. 560 ; *Elser v. Graber*, 6 S. W. Rep. 560. (3) The $1,400 note and $750 note were individual and not firm debts. Money borrowed by members of a firm, as capital stock, in contemplation of a copartnership, does not constitute firm debts, although the money so borrowed actually goes into the firm business. *Goodbar v. Cary*, 16 Fed. Rep. 316 ; *Hilliker v. Francisco*, 65 Mo. 598 ; 1 Lindley on Part. [Ewell's Ed.] p. 274 ; 2 Lindley on Part. [Ewell's Ed.] p. 610 ; *Peck v. Schultz*, 1 Holmes, 28 ; Myer's Fed. Dec. 353.

*R. S. Matthews* and *John F. Williams* for respondent.

(1) The evidence all tends to prove the good faith of respondent. The firm had a right to sell, the interpleader to buy. The firm had a right to prefer a creditor. They preferred respondent as they should have done under the circumstances. The law permitted him to buy for part cash and part credit at a reasonably fair price. *Ryan v. Young*, 79 Mo. 32 ; *Forrester v. Moore*, 77 Mo. 651 ; *Shelby v. Booth*, 73 Mo. 74 ; *Coffin Co. v. Rubelman*, 15 Mo. App. 280 ; *French v. Matley*, 63

Mo. 328; *Giddings v. Sears*, 115 Mass. 505. (2) The Williams note for $750 was a valid, subsisting debt, overdue, and owing him by the interpleader. Morgan Thomas was also liable to Williams for the debt, but was insolvent at the time. The fact that, after the sale to respondent, Williams became alarmed and obtained further security from Morgan Thomas by a deed of trust on his homestead does not affect the *bona fides* of the sale of goods. A surety may buy property to protect his suretyship. *Albert v. Besel*, 88 Mo. 150; *Shelby v. Booth*, 73 Mo. 74; *Leinkauff v. Frenkie*, 80 Ala. 136; *Pashly v. Mandego*, 47 Mich. 172. (3) The $750 loaned by Williams to respondent was a part of the capital stock of the firm; at the date of the sale, the respondent owed the money to Williams. The firm owed it to respondent. If afterwards Williams became alarmed and without the knowledge of interpleader secured a deed of trust upon the homestead of Morgan Thomas that does not affect the sale ; and, if it turns out that Morgan Thomas pays the Williams debt, then interpleader will be compelled to pay the $750, and interest to the creditors of the Thomas Brothers, thus enriching them to that amount. Respondent had a right to secure himself as he was bound to pay this note. See authorities cited under second point.

THOMAS, J.—This is an action by attachment for balance on account, of $1,127.29, against "Thomas Bros.," a firm composed of Morgan Thomas, Lot Thomas and T. L. Thomas, three brothers, and sons of John M. Thomas. The latter interpleaded for the goods attached, and the court below having rendered judgment for him, the plaintiffs appealed to this court.

The evidence on the part of the interpleader was in substance as follows : Morgan Thomas, Lot Thomas and T. L. Thomas, desiring to go into the mercantile business, applied to their father, John M. Thomas, for pecuniary aid and obtained from him a loan of $1,400, for which

they all gave their note, dated December 9, 1886, payable twelve months after date with interest at the rate of ten per cent. per annum from date. Soon after this transaction, Morgan Thomas borrowed $750 from his father-in-law, W. W. Williams, to put into the business, for which he executed his note, his father John M. Thomas either signing it as surety, or executing another note to Williams as collateral. On the nineteenth day of January, 1887, the copartnership of Thomas Bros. was formed and started business at New Cambria, Macon county, Missouri, with a capital stock of $2,150, this amount being made up of the $1,400 borrowed of their father, and the $750 borrowed of W. W. Williams, neither member of the firm having any money of his own. T. L. Thomas and Lot Thomas had no property whatever, but Morgan Thomas owned about one hundred acres of land, worth about $1,800, and a lot of stock and farming implements.

On the eighteenth day of March, 1887, Thomas Bros., executed their note to John M. Thomas for $290, due one day after date, with interest from date at the rate of ten per cent. This was the only money loaned by John M. Thomas to the firm of Thomas Bros.

By the first day of January, 1888, the firm of Thomas Bros. had become indebted to the wholesale trade to the amount of $6,000, over and above the amount claimed to be due interpleader. On the seventeenth day of January, 1888, the said firm sold their entire stock in trade to their father and executed and delivered to him the following bill of sale :

"We, John M. Thomas, party of the first part, and Morgan Thomas, Lot Thomas and T. L. Thomas, parties of the second part. Witnesseth, by this agreement that for and in consideration of the sum of $4,500, the receipt of which is hereby acknowledged, the parties of the second part have sold assigned and transferred to the said party of the first

part their entire stock of merchandise in the town of New Cambria, consisting. of dry goods, groceries and general merchandise, amounting to $4,500, as per inventory this day completed. For said merchandise the said parties of the second part· have received a discharge of their indebtedness to the party of the first part for the sum of $2,680, money borrowed by them from the party of the first part, and the said party of the first part has this day made, executed and delivered his note to the parties of the second part, payable in one year in the sum of $1,820, with eight-per-cent. interest. It is further agreed that the said John M. Thomas will collect the outstanding book accounts due the firm of Morgan Thomas, Lot Thomas and T. L. Thomas, or so much thereof as can be collected without percentage or fees for collecting the same, and shall apply said amount collected in discharge of the obligations due by said second parties. It is further agreed that any sums that the said John M. Thomas may from time to time pay out of his own money on the obligations of said parties of the second part, he shall have a credit for like amount on his note this day given to the parties of the second part as above described.

"In witness whereof, we have hereunto set our hands this seventeenth day of January, A. D. 1888.

"JOHN M. THOMAS,
"MORGAN THOMAS,
"LOT THOMAS,
"T. L. THOMAS."

The interpleader testified, that, learning that the firm was in debt about $6,000, besides what was due him and Williams, and being informed it was insolvent he went to the members thereof, and asked them to secure him, which they consented to do, and the above bill of sale was accordingly executed. He testified further that the sum of $2,680, mentioned in the bill of sale, was made up of the notes of $1,400 and $290 due him and of the note of $750 due Williams, with the

interest then accrued, and that the stock of goods was valued at $4,500, including $500 in cash then in the drawer, all of which he got. Interpleader had "John M. Thomas" painted instead of "Thomas Bros." as the sign for the store. He employed T. L. and Lot Thomas as his clerks to run the business. On January 23, 1888, Morgan Thomas gave W. W. Williams, trustee, a deed of trust on the one hundred acres of land owned by him, to secure the payment of the note of $750, dated in January, 1887. Interpleader never paid this note to Williams, and it was still outstanding at the time of the trial of this case in September, 1888. After the execution of the bill of sale, there was an understanding between John M. Thomas and his two sons, T. L. and Lot Thomas, that a private, individual indebtedness of the latter to the former, amounting to about $500 should be credited on the said note of $1,820, and John M. Thomas paid debts owing by his sons, to the amount of $706.94, which was credited on the note of $1,820.

Early in February, 1888, this suit and several others were instituted against Thomas Bros., and the stock of goods included in the bill of sale to the interpleader were attached; and the questions here involved grow out of the contest between the interpleader and the attaching creditors of Thomas Bros., in regard to these goods.

At the close of the evidence on the part of the interpleader, the court was asked to instruct the jury to find the issues for the plaintiffs, which the court refused to do, and in this we think it committed error, and for these reasons:

I. It was held by this court in the case of *Sexton v. Anderson*, 95 Mo. 373, and we will concede, that all the members of the firm may apply partnership property to the payment of their individual debts, if done in good faith, and without a fraudulent design, and hence we will not inquire whether the $1,400 borrowed

of the interpleader, and the $750 borrowed of Williams, constituted the private debts of the members of the firm of Thomas Bros., or not. We think it very clear that the bill of sale in this case, when viewed in the light of the surrounding circumstances, as given by the interpleader himself, is invalid as to the creditors of the firm, under our statute of fraudulent conveyances, which declares void a sale of property "made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions," etc. R. S. 1889, sec. 5170.

This bill of sale both *hinders* and *delays* creditors "of their lawful actions." The interpleader took $2,680 of the firm assets to liquidate what he claimed he had advanced for them. This he had a right to do, if done in good faith, and with no fraudulent design, and if that amount was in fact due him; but there was a conceded surplus of $1,820, after the payment of all his claims, which the creditors of the firm had an undoubted right to have applied in payment of their demands. Instead, however, of leaving this surplus in the hands of the members of the firm, he took all the property and gave his note for $1,820, payable *one year after date*. The natural, probable and even necessary effect of this arrangement under the circumstances was to hinder and delay the creditors of the firm of their lawful actions, and the parties to it must be held to have intended that effect as the natural, probable and necessary result of their voluntary act. We apply the rule to this transaction from the following considerations: *First*. The firm and the members of the firm were insolvent, and known to be insolvent by the vendee. *Second*. The whole of the property of the firm was conveyed. The sale of the surplus, on credit, delayed the creditors a year at least, and put it in the power of the members of the firm to dispose of the note, which was negotiable, to an innocent purchaser, and thus effectually deprive the creditors of this surplus absolutely.

In *Elser v. Graber*, 69 Tex. 222, it appeared that a merchant, being in an insolvent condition, went to his father-in-law, to whom he was indebted in the sum of $1,800, and informed him of his condition, and it was agreed between the two that the father-in-law should take the stock in trade at $2,500, giving his note due twelve months after date for $600. The goods were attached by other creditors, and the trial court found that the transfer was fair. Upon these facts the supreme court of Texas, through GAINES, J., said: "By this transaction, he," the merchant, "placed that portion of the property not used to pay his own claim beyond the reach of the other creditors; and left the vendor free to deal with it as his own. The necessary consequence of this proceeding was to hinder and delay the other creditors as to this surplus, and the parties must be presumed to intend the direct result of their own wilful conduct. The transaction is fraudulent in law; and appellee cannot be permitted to say that his intent was fair. * * * The point has been repeatedly decided by this court. *Oppenheimer v. Haeff*, 4 S. W. Rep. 562; *Seeligson v. Brown*, 61 Tex. 180. The fraud of a part taints the whole transaction, and it must be set aside. *Lambeth v. McClinton*, 65 Tex. 108." See also *Blum v. McBride*, 69 Tex. 60. And this is the rule to be deduced from the adjudications elsewhere. *Ruhl v. Phillips*, 2 Daly, 45; *Downing v. Kelly*, 49 Barb. 547; *Warner v. Lake*, 14 N. Y. Sup. 10. And this is the doctrine also of this court. *Bigelow v. Stringer*, 40 Mo. 195.

II. Besides the necessary effect of the extension of the time of payment of the note to hinder and delay the creditors of this insolvent firm, the bill of sale contained this stipulation: "It is further agreed that any sums that the said John M. Thomas may from time to time pay out of his own money on the obligations of the said parties of the second part, he shall have a credit of like amount on his note this day given to the parties of the

second part as above described." Here is a bill of sale
not only preferring the vendee himself, but also cloth-
ing him with power to prefer other creditors at his dis-
cretion, to the extent of the surplus. And the record
shows that up to the time of trial he had preferred other
creditors to the extent of $706.94, which was then
credited on the note of $1,820. This provision in the
bill of sale is a badge of fraud in law. *Barnum v.
Hempstead*, 7 Paige, 568; *Boardman v. Holliday*, 10
Paige, 223; *Strong v. Skinner*, 4 Barb. 546. While an
insolvent debtor has a right to prefer one creditor over
another, he has no power to delegate this right to a
third person. It was pertinently said by Chancellor
WALWORTH, in *Barnum v. Hempstead, supra*, that
" Neither the debtor nor his friendly assignees, who are
generally selected by himself, should have the power of
giving preferences afterwards to any class of debts or of
creditors, whereby such creditors might be induced to
relinquish some part of their claims, or to refrain from
enforcing the same against the trust fund in the hands
of the assignees, in the hope of obtaining a preference in
payment on account of such indulgence or by the relin-
quishment of a part of their claims. And an assign-
ment which thus places any of the creditors in the
power of the debtor, or of his assignees, must have the
effect to delay or hinder his creditors in the collection
of their debts."

We have not lost sight of the fact that the cases of
*Barnum v. Hempstead, Boardman v. Holliday* and
*Strong v. Skinner, supra*, involved questions arising
out of assignments for the benefit of creditors, which are
clearly distinguishable from absolute sales, yet we can
perceive no reason why the principle of these cases may
not be applied to a bill of sale where there is a conceded
surplus due the vendors. In the case at bar, the
vendors owed $1,820, and this amount they authorized
the vendee to pay to their other creditors, giving prefer-
ences without restriction or limit. As was said by

Chancellor WALWORTH, this stipulation conferred on the vendee a power to induce creditors to relinquish some part of their claims or to refrain from enforcing the same against the trust fund in the hands of the vendee, in the hope of obtaining a preference of payment on account of such indulgence, or by the relinquishment of a part of their claim, and such a stipulation does avoid and ought to avoid the transfer.

III. A part of the consideration of this sale was fictitious, and a part being fictitious and, therefore, void, the sale as a whole must fall. *State ex rel. v. Hope*, 102 Mo. 410. There is no question, for the uncontradicted evidence conclusively shows that the $750 borrowed of Williams was the individual debt of Morgan Thomas, and that interpleader did not pay nor assume that debt. He was liable for it, it is true, as surety for his son, but here he did not attempt to secure himself for any contingent liability for it, but put it in as a part of the consideration of the sale as an absolute payment, without paying or assuming unconditionally to pay it. That he did not assume to pay it is manifest from the fact that on January 23, 1888, six days after the execution of the bill of sale, Morgan Thomas gave a deed of trust to secure the payment of this sum to Williams, on land worth more than twice as much as the sum secured, of which interpleader had notice. The record before us, therefore, shows that the interpleader did not pay nor assume to pay this debt, and that it has been secured so that he will not have it to pay in the future, and if we permit this sale to stand he will be enabled to appropriate this sum of $750, and the interest thereon, without any consideration whatever, which must necessarily operate to the injury of the other creditors.

Our conclusion is that the demurrer to the evidence offered by the interpleader ought to have been sustained. The judgment must, therefore, be reversed and the cause remanded with directions to enter judgment for plaintiffs on the issue presented by the interpleader. All concur.