THE OLIVER-FINNIE GROCER COMPANY, Appellant, v. H. C. MILLER *et al.*, Respondents.

### St. Louis Court of Appeals, February 14, 1893.

1. **Deed of Trust:** LAW AND FACT. It is the duty of the court to declare an instrument—in this cause a deed of trust conveying personalty—void as to creditors of the maker, when facts which invalidate it as to them appear expressly or by necessary implication upon its face.

2. ———: EFFECT OF PROVISION EXACTING FORBEARANCE OF CREDITORS. A deed of trust for the benefit of creditors is fraudulent in law, if, as a condition to their right to take under it, it exacts their forbearance in the enforcement of their claims at the will and demand of the maker of it.

3. ———: CONVEYANCE TO USE OF GRANTOR. Such a deed of trust is also fraudulent, as being to the use of the maker, if, prior to the satisfaction of debts secured thereby, it entitles him to receive a part of the proceeds of the property conveyed, and gives him a power of appropriation over the same.

4. ———: PURPOSE OF PARTIES TO PROVIDE FOR CONTINUANCE OF INSOLVENT GRANTOR'S BUSINESS FOR AN INDEFINITE PERIOD. A deed of trust, made by an insolvent, and conveying his stock of goods, is invalid, if it appears therefrom that it was the purpose of the parties to it to thereby provide for the continuance of the grantor's business for an indefinite period.

*Appeal from the Wright Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Goode & Cravens*, for appellant.

*Wolf & Bowden*, for respondents.

BOND, J.—This was an attachment suit. There was a trial on a plea in abatement, and judgment thereon abating the writ. Plaintiff appealed. On the

trial the only evidence adduced was the deed of trust hereinafter mentioned, which was shown to have been executed and recorded before the levy of the writ.

The question in this case is, whether or not the deed of trust made by respondents is fraudulent in law on its face.   To ascertain the character of the deed we must examine its terms and provisions taken as a whole. It was made by the members of a partnership, and embraced four lots in Mountain Grove, Missouri, and all buildings thereon, and all partnership assets contained in said buildings, and the firm business.   It referred to a similar conveyance of partnership assets and firm business belonging to the same grantors in Cleveland county, Arkansas.   It recited that the grantors were "financially cramped," and desired to pay all their creditors, if possible.   It recited the giving of three notes each to the two first-named creditors therein, and certain sums due three other creditors therein named.   It stated that the grantors believed that their indebtedness could be paid out of the property conveyed if, *first*, "the said businesses are continued;" *second*, "an extension of the time of payment of the said indebtedness of said firm could be had;" *third*, "and present advances are made for the purpose of carrying on said business."   The deed then recited that the two first-named creditors "are willing and hereby agree to make for such purpose   *   *   *   such advances in cash or merchandise," in such amounts and at *such times as they may deem safe and necessary*, for the better carrying on said business by said trustee or trustees, not exceeding $2,400 on the part of one of said creditors, and $1,600 on the part of the other.   The deed of trust then provided that the trustee therein named shall carry on said merchandising as heretofore carried on by the grantors, and in the usual course of trade shall sell and dispose of said

merchandise, and for that purpose may, from time to time, make such purchases and such contracts, and employ agents, etc. The trustee may be restricted in employing agents or creating liabilities without written authority from first-named creditors, and directed to keep books of account of the conduct of the business, and send statement of same and all receipts to first-named creditors monthly and weekly, unless otherwise directed, to be by him held for the purposes of this trust. The deed then provides that the trustee should pay out of the profits of the trust, *first*, the notes of the first and second-named creditors and any extensions thereof, if made, when the same become due and payable; *next*, to the three other creditors *seriatim*, and, *next*, "to any other creditors" of the grantors, who shall, by their instrument in writing directed to said trustee, accept the provisions of this trust conveyance, and extend the time of payment of their indebtedness respectively "according to the demands of the grantors within sixty days from date hereof." It further provided that, if the business to be conducted under this trust, together with that to be conducted under a similar trust in Arkansas, should earn $500 net profit per month for the next four months, then and thereafter for each month that said two *businesses* should earn said amount for said time, $200 per month should be paid to the grantors, to be by them appropriated to other creditors than those named herein, who may have in writing accepted the provisions of this trust as above specified. It was further provided that this trust deed should be foreclosed, if the notes or extensions thereof of the two first-named creditors are not paid when due, at the option of said creditors; that, in case of such foreclosure, the trustee should pay, *first*, the costs thereof; *second*, the debts contracted by him for the benefit of said estate; *third*, the notes and inter-

est of the two first-named creditors; *fourth*, the indebtedness due other creditors who may have come in under this deed and extended the time of payment of the indebtedness due them as herein provided. It then gives the two first-named creditors power to remove said trustee and appoint a successor, and gives one of them power to fix his remuneration for services, and provided for a reconveyance of the trust property after payments of the secured indebtedness, and waiver of redemption by the grantors. The instrument was signed by the grantors, the trustee and the two first-named creditors.

From the foregoing statement of the material provisions of the trust deed, it appears either expressly or by necessary implication that it was executed under the following circumstances and for the following objects and purposes: *First*, the grantors therein were "financially cramped;" *second*, they desired to pay "all their creditors in full, if possible;" *third*, they thought this could be done out of the property and the business conveyed, provided, *first*, the two *businesses* could be continued; *second*, an extension of the time of payment of the firm indebtedness could be had; *third*, present advances could be had for "carrying on said business."

It is evident from so much of said instrument that its makers realized that their only ability to pay their indebtedness depended upon a forbearance on the part of their creditors, present advances of money and goods, and a profitable outcome of the two firm *businesses* in the hands of a trustee. In fact these three things are expressly stated in the deed as the means by which the debtors therein intended, "if possible," to pay their creditors. Their financially cramped condition, which is but another way of saying they did not have ready money to pay their debts nor to buy

goods, made it necessary for them to procure an exten-
sion of time as to their debts and procure a loan to buy
stock in trade. That both extension of time and
advancements were required proves the grantors in the
trust deed could neither pay all their debts *then* due,
nor carry on their business. It follows, therefore, that
the grantors in said trust deed were insolvent when it
was made, since the law defines "solvency to be the
*present* ability of the debtor to pay out of his estate all
his debts." *Ring v. Paint & Glass Co.*, 44 Mo. App.
111, 116. As this insolvency is a necessary implication
from the face of the deed, notice of it is imputed to all
the parties thereto.

To ascertain the purpose with which the grantors
in the deed proposed to use the three instrumentalities
therein adopted, to-wit: *First*, continuance of their
business, *second*, extension of time by their creditors,
and, *third*, present advances, we will discuss them
*seriatim*, in the light of all the provisions of the instru-
ment bearing on each.

*First.* As to the continuance of the *businesses.*
The trustee or his successors under the deed "were
empowered to carry on said merchandising as hereto-
fore carried on," with power to buy and sell stock in
trade, employ agents, etc., subject to the restriction of
written authority from the first-named creditor, to
whom also said trustee was required to make monthly
statements and weekly remittances, unless *otherwise
directed* by said director. The trustee was further
required, in the event the *businesses* conducted under
this and a similar instrument in Arkansas netted $500
per month, to pay out of profits beyond that amount,
after four months, as long as said business earned said
amount, $200 per month to the grantors, to be given
by them to certain other creditors. He was required
to foreclose only at the option of the two first-named

creditors, when their notes or extensions thereof were due and unpaid. It thus appears that the design of this trust deed was the continuance of the partnership business of the grantors in the name of a trustee, so that the lien and protection of the instrument should attach to, and cover, the stock in trade and assets of said firm as the same might be replenished or diminished. And, although said trust deed purported to have been made for many, and possibly all, of the creditors of the grantors, the power of foreclosure was lodged in only two of said creditors, and to be exercised at their option.

*Second.* As to extension of time by creditors. The trust refers to the "notes and extensions" thereof of the two first-named creditors. It does not, however, in any of its provisions make it the duty of the two first-named creditors to *grant* extensions of their notes. Nor does it anywhere limit the right of said two first-named creditors to grant indefinite extensions, but it provides specially and expressly that the debts due these two first-named creditors shall be paid foremost and fully, before the payment of the claims of the other creditors of the makers of said trust deed. It does not make any allusion to any extension of the lumping claims, alleged in said trust deed to be due the three second-named creditors therein. It, however, does provide with reference to all other creditors, except the foregoing five, that such other creditors shall signify their written assent to the provisions of the instrument in question within sixty days after its date, and shall only be entitled to the peculiar provisions made therein for their benefit, upon the express condition that such other creditors shall grant an extension of their several claims *according to the demands* of the makers of said trust deed. It thus appears by the express terms of the trust deed that the two first-

named creditors therein are under no duty, whatever, to extend their respective claims, but on the other hand have an unlimited option in so doing, preserving meanwhile and during such extension, for whatever time given, a full and complete priority of satisfaction out of the "businesses" in the hands of the trustee. It also appears from said trust deed that the three second-named creditors therein are not required to extend the indebtedness due them, and no right of extension is granted to them. It is further stated, however, in said trust deed, in reference to all other creditors of the grantors, that they shall be debarred of any rights or benefits thereunder, unless they shall each and all grant extensions of their claims according to the demands of their debtors; in effect that such debtors shall have the right and power to coerce their creditors into a non-enforcement of their claims for such time as such debtors shall dictate. In this connection we observe from the peculiar wording of that portion of the trust deed purporting to provide, during its operation, for the interests of the three classes of creditors that, according to its terms, such latter creditors, even if they submit to the will of their debtors in granting them extensions of time, are only entitled to get a possible surplus of $200, to be paid by the trustee into the *hands of such debtors, and to be by them appropriated* to the claims of the consenting creditors.

*Third.* As to present advances. While the deed of trust fixes a limit, to-wit, $2,400 and $1,600, beyond which advances are not to be made by the two first-named creditors, respectively, it only obligates them to make advances "in such amounts and at such times," as said creditors may deem safe and necessary for the better carrying on of said business by said

trustee.   It is, therefore, apparent from the face of the deed that the whole matter of present advances depends upon the *discretion* of the two first-named creditors. We conclude that a deed of trust conveying stock of goods, etc., purporting to have been made by insolvent debtors for the preference of some, and the possible payment of all, their creditors, is a fraudulent instrument in law under section 5170 of the Revised Statutes of 1889, when it shows on its face or by necessary implication from its terms:   *First.*   That it was contrived to work an indefinite continuation of a partnership business (involving the diminution and replenishments of its stock in trade) under the name of a trustee or trustees, and under the cover of a lien.   *Second.*   That it was given for an alleged extension of time and for alleged agreement to make present advances, but that, as far as the preferred creditors were concerned, no definite extension of time was stipulated for, and that, as to the general creditors, an indefinite extension was stipulated for.   *Third.*   That it was given for present advances, and that, while it fixes a limit for such advances, it created no obligation beyond the discretion of the preferred creditors to furnish the same.   *Fourth.*   That it only purported to secure their general creditors during its operations by a possible surplus to be paid into the hands of the insolvent debtors for the benefit of such general creditors, with power in said debtors to fix the time of payments to such creditors.

This conclusion is the necessary result of the decisions in this state and elsewhere, and becomes apparent from the examination and application of the doctrine of such cases to the terms and provisions of the instrument in question.   The provision in the trust empowering the grantors to hold off all their creditors (except the five preferred creditors), according to the

demands of such grantors, is invalid. There is no distinction in principle between a stipulation in an assignment exacting a release from creditors before participating in its provisions, and a stipulation in a trust deed made for creditors exacting the forbearance of their claims at the will and demand of the grantors before they shall partake of the trust. In both cases the creditor is under the compulsion of his debtor, and must yield at the debtor's demand the enforcement and collection of his (the creditor's) rightful claims, and in each case the creditor is hindered or delayed within the purview of the statute. Revised Statutes, 1889, sec. 5170. With reference to a stipulation for a release in an assignment, Judge NAPTON says (*Brown v. Knox*, 6 Mo. 302): "The circuit court ought, in my opinion, to have declared this assignment fraudulent and void as against the rights of the attaching creditor;" and, *arguendo:* "It appears then to be in strict conformity to the letter and spirit of our statute of frauds, consonant to the general policy of our statutes, and, I think I may add, according to sound views of morality and common honesty, that a debtor should not have the privilege of dictating terms to his creditors, and of excluding a *bona fide* creditor from all benefit in his property, who will not accede to those terms." And, in the late case of *Seeger's Sons v. Thomas Bros.*, 107 Mo. 635, 643, the supreme court applied the foregoing doctrine to a case of a fraudulent sale, where a vendee was authorized to pay the surplus of the purchase price to other creditors, saying: "This stipulation conferred on the vendee a *power* to induce creditors to relinquish some part of their claims or to refrain from enforcing the same, * * * in the hope of obtaining a preference of payment on account of such indulgence, * * * and such a stipulation *does avoid and ought to avoid the transfer.*" *Barnum v. Hempstead*, 7 Paige, 568, 572.

II.   As to the provision for the benefit of such general creditors as might come in under the trust and give extensions according to the demands of the debtors.   This requirement of the deed that said amount ($200 per month in case the trustee earned $500 for four preceding months) should be paid back to the debtors, to be by them appropriated to such creditors, in effect nullified the trust to this extent, and abrogated the duties of the trustee.   This provision contravenes the purpose of the trust, which must be assumed to have been made to secure the property conveyed to the creditors.   If, however, the debtor requires the trustee to pay back to him the property or its proceeds, then the creditors have no more security than they possessed before the form of making the trust was gone through with, and, per consequence, as far as such creditors are concerned the trust is a sham, and contrived merely to hinder and delay.   The debtors, to whom this provision was to be paid back, had also the right to compel the creditors for whom it was alleged to be intended to grant a forbearance *according to the demands* of such debtors.   It follows that, under this trust deed, such debtor could hold off their creditors with one hand while receiving from the trustee with the other hand the very provision belonging to such creditors.   Such a transaction would necessarily be to the use of the grantors.

III.   As to the object of said trust deed.   As there was no limitation upon its operations except the will of the two first-named creditors, we conclude from this fact and the other terms of the deed that it was the purpose of the grantors and their two creditors that it should continue for an indefinite period.   As to such trusts this court has said (*Thompson v. Foerstel*, 10 Mo. App. 297), speaking of *Hepburn v. Mueller*, 10 Mo. App. 87: "That was the case of an embarrassed debtor who

attempted to convey all his property to a trustee, with a general provision that the trustee should carry on the business of the debtor for an indefinite period, the necessary effect of which would be to hold the creditors at arm's length." Also in *Hepburn v. Mueller, supra,* speaking of a deed empowering a trustee to carry on a mercantile business by replenishing stock, etc., as in the deed now before us, this court said: "The stock must be kept up by the terms of the mortgage, and, if the profits of the business are sufficient, may be perhaps increased, since there is no inventory and no valuation; and when, in the course of trade, the notes are paid, property to the full value of that originally mortgaged may be turned over intact to the insolvent mortgagor. He is to be allowed, by the intervention of a trustee, to hold his creditors off, and to do thus indirectly that which the law will not allow him directly to do."

The law is well settled that, where the impeaching facts appear expressly or by necessary implication upon the face of the deed of trust or mortgage, it is the duty of the court to declare the instrument void at the instance of creditors. *Bullene v. Barrett,* 87 Mo. 185; *Weber v. Armstrong,* 70 Mo. 217; *Walter v. Wimer,* 24 Mo. 63; *Smith v. Ham,* 51 Mo. App. 433.

We are constrained under the law, and upon the terms and provisions of the deed of trust in question, to hold that it was fraudulent in law, irrespective of the intent of the parties. For the error committed by the circuit court in not so holding, the judgment in this cause is reversed and the cause remanded to be tried in conformity with the views herein expressed. All the judges concur, Judge BIGGS in the result.